BERNADINE ROSS, IN HER OWN RIGHT AND AS ADMINISTRATRIX OF THE ESTATE OF EVERT ROSS, DECEASED, APPELLANT, V. ESTHER ROSS ET AL., APPELLEES, IMPLEADED WITH MELANIE ROSS ET AL., APPELLANTS.

219 N. W. 2d 756

Filed June 27, 1974. No. 39332.

Robert E. Paulick, for appellant Bernadine Ross.

John A. Wagoner, for appellants Melanie Ross et al.

Guyer Grimminger, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

CLINTON, J.

This is an action brought by Bernadine Ross against Esther Ross and others to compel specific performance of an oral contract to convey a 200-acre tract of farmland. The defendant Esther Ross entered a general denial and also pled the statute of frauds. The plaintiff sought equitable relief on the basis of alleged part performance. The plaintiff commenced the action initially both in an individual capacity and as administratrix of the Estate of Evert Ross, her deceased husband. Later her claim as administratrix was withdrawn and the three children of Evert Ross were joined as parties-defendants. Two of these are minors and are represented by a guardian ad litem. Two are the issue of a prior marriage and one by the marriage to Bernadine. The children join by cross-petition in a claim for specific performance by virtue of being the heirs-at-law of Evert Ross who is alleged to be a purchaser under the oral contract. The pleadings do not set forth the specific interest which the children claim.

The defendant Esther Ross was the record title owner of the real estate in question and the mother of Evert

Ross, deceased. The defendant James Ross, a son of Esther, and the defendant Rose, wife of James, are persons to whom Esther, after Evert's death, conveyed the property in question.

The plaintiff and the children presented their evidence and when they rested the court granted the motion of the defendants Esther, James, and Rose for a directed verdict and found that the plaintiff and the cross-petitioners had failed to prove by a preponderance of the evidence the necessary elements to entitle them to specific performance.

The following principles govern the disposition of this case: In an action for specific performance of an oral contract to convey real estate where partial performance is relied upon to avoid the defense of the statute of frauds, the evidence of the alleged contract and its terms must be clear, satisfactory, and unequivocal. Such contracts are on their face void as within the statute of frauds, because not in writing, and, even though proved by clear, satisfactory, and unequivocal evidence, they are unenforceable unless it is also proved by evidence of like character that there has been such performance as the law requires. The acts constituting performance must be such as are referable solely to the contract sought to be enforced, and not such as might be referable to some other and different contract or relation. They must be something that the claimant would not have done unless and on account of the contract and with the direct view to its performance so that nonperformance by the other party would amount to fraud upon him. Caspers v. Frerichs, 146 Neb. 740, 21 N. W. 2d 513.

In many respects, as the trial court properly found, the evidence of the alleged contract and its terms is not clear, satisfactory, and unequivocal. The first and most important deficiency is the uncertainty as to the identity of the buyers and the nature of their interest. Bernadine's theory is that she and Evert were to acquire

a joint tenancy and this is the theory upon which she brought the action. There is no evidence to clearly support that proposition. The second uncertainty is that the testimony is insufficient to define clearly the contract terms, including purchase price, time of performance, and the nature and extent of the improvements which allegedly were to be made as a portion of the purchase price.

Bernadine testified to a conversation which took place a few weeks after her marriage to Evert. This conversation was between her and Esther. We summarize the testimony by setting forth the answers. The questions we believe are reasonably inferable. "She said that Evert and I would have a wonderful farm if we worked it real hard. . . . We were buying it. . . . From Esther Ross. . . . The understanding was we was supposed to fix the buildings up on the place. After got on was supposed to pay $25.00 a month like the rest of the boys. . . . $5,000.00." Later she testified the purchase price was $6,000. "That we were building the farm up and we fix the buildings up, repairing the farm, and when we got to the point where could afford it, we pay $25.00 a month on it." With reference to when such payments should start, she stated: "When we got so we were able to run a farm, good equipment, like most farmers have, buildings, machinery and land in good condition." Later she testified: "When we got the farm at least situated." Evert does not appear to have been a participant in these conversations or present at the time.

The record shows that Evert made improvements on the property which consisted of constructing a basement and foundation for a house and moving on a house which he owned, the construction or moving on of outbuildings, the construction of a well and a water system, fencing for hog pens, septic system, and the planting of a shelter belt. At the time of Evert's death the repair and improvement of the house was still underway.

The witness testified that Evert had purchased the house for $2,500 before he met or married Bernadine and that she had been told by him that there was some understanding at that time that the house would be placed on the farm. There is, however, no evidence as to what the agreement was under which this was to be done.

While Evert and Bernadine occupied the farm, a period of about 4 years, they received all the income and paid neither rent nor payments on the alleged contract, but did pay the real estate taxes during that time. Bernadine testified that the improvements on the farm were worth $17,000, but there is no foundation for this opinion. There is no evidence to indicate the extent to which the improvements enhanced the value of the farm, nor any evidence of the value of the farm itself.

The above recitals lead to the conclusion that it is uncertain whether Evert alone was the purchaser, or whether Evert and Bernadine were the purchasers, and if so whether as tenants in common or joint tenants. If Evert alone was the purchaser, then Bernadine's interest would be one-fourth and that of the children three-fourths. If they were purchasers as tenants in common, then Bernadine's interest would be four-sixths and the children's two-sixths. If, as Bernadine theorizes, she was a joint tenant, then Bernadine's interest would be 100 percent. If the children have an interest, there is no suggestion as to how their portion of the purchase price is to be paid. After Evert died, rent was demanded and Bernadine moved off the farm.

It seems apparent that the proof of the alleged contract was unsatisfactory and equivocal in some of the essential terms. It further seems that the partial performance relied upon is as referable to considerations of present use together with a probability of inheritance or gift as it is to a contract to purchase. The trial court properly denied specific performance.

The plaintiff also complains that the court erred in

setting aside a finding of default which it had earlier made against defendants and permitting them to answer. No judgment having been entered it was clearly within the discretion of the court to permit a late answer to be filed.

The judgment is affirmed.

AFFIRMED.