2001 SD 106

**G. Robert TROUTEN, Plaintiff and Appellee,**

v.

**HERITAGE MUTUAL INSURANCE COMPANY, Defendant and Appellant.**

**No. 21590.**

Supreme Court of South Dakota.

Considered on Briefs April 24, 2001.

Decided Aug. 15, 2001.

James L. Hoy and Carleton R. Hoy of Hoy & Hoy, Sioux Falls, SD, Attorneys for plaintiff and appellee.

Gary P. Thimsen and William G. Beck of Sioux Falls, SD, Attorneys for defendant and appellant.

[¶ 1.] **Justice Robert A. Amundson delivers the majority opinion of the Court on Issue One which holds that the trial court erred in permitting the plain-** tiff to maintain a direct action suit against the defendant as a third party beneficiary of a contract.

[¶ 2.] **Circuit Judge Timothy R. Johns delivers the majority opinion of the Court on Issue Two which holds that the trial court erred in permitting the plaintiff to proceed against the defendant for bad faith breach of an obligation to pay under a contract.**

AMUNDSON, Justice, writing for the majority on Issue One.

[¶ 3.] Heritage Mutual Insurance Company (Heritage) appeals from a circuit court order denying its motion to dismiss, its motion for a protective order and its motion to sever and granting plaintiff's motion to compel discovery. We granted Heritage's petition for allowance of appeal from the intermediate order on August 10, 2000. We reverse and remand.

FACTS

[¶ 4.] Vicki L. Kenison purchased a business liability insurance contract from Heritage for the period of June 20, 1999 through June 20, 2000. This policy was to provide coverage for her business, Rock Bottom Liquidators, located in Sioux Falls, South Dakota. The policy provided coverage for "medical expenses ... for bodily injury caused by an accident ... [o]n ways next to premises you own or rent ... regardless of fault." The medical expense limits were $5,000.

[¶ 5.] G. Robert Trouten (Trouten) alleges that, on June 30, 1999, he slipped and fell on a sidewalk abutting the building insured by Heritage. Trouten reported the accident to Heritage and made a claim for medical and hospital expenses exceeding $5,000. Heritage denied the claim in its entirety.[1]

[¶ 6.] As a result of the denial of his claim, Trouten brought an action for

---

1. Whether the fall actually occurred and, if it did, where it occurred and whether it resulted in the injuries claimed by Trouten are all facts in dispute.

breach of contract against Heritage in January 2000. Trouten later filed an amended complaint seeking compensatory damages for breach of contract, punitive damages for bad faith breach of the insurance policy and attorney's fees.

[¶ 7.] Heritage denied the existence of contractual obligations to Trouten and moved for a judgment on the pleadings. The motion was subsequently denied with the court ruling that the breach of contract and bad faith claims stated viable causes of action.

[¶ 8.] On May 18, 2000, Trouten served Heritage interrogatories and a request for production of its entire claim file relating to the case. Heritage objected to Trouten's discovery request and moved for a protective order and an order severing the bad faith and contract claims. Heritage also served a motion to dismiss for failure to state a cause of action which the trial court treated as a second motion for judgment on the pleadings. On the same day, Trouten filed a motion for an order to compel discovery. A hearing was held and Heritage's motions were denied while Trouten's motion to compel discovery was granted. Heritage then filed a petition for a discretionary intermediate appeal from the trial court's order denying its motions and granting Trouten's discovery request.

## ISSUES AND ANALYSIS

[¶ 9.] Although a number of issues have been raised, we need only address two.

## ISSUE ONE

[¶ 10.] **Whether Trouten can maintain a direct action suit against Heritage when he did not contract with Heritage?**

[¶ 11.] This is an issue of first impression in South Dakota. "As a general rule there is no privity between an injured person and the tortfeasor's liability insurer, and the injured person has no right of action at law against the insurer[.]" 44 AmJur2d *Insurance* § 1445 (1982). However, there are exceptions to this rule where a statute authorizes such suits or where the injured person is considered to be a third party beneficiary of the contract.

[¶ 12.] There is no statute in South Dakota which allows a direct action by an injured person against another's liability insurer absent a judgment having been first obtained against the tortfeasor. *See* SDCL 58–23–1 (direct action allowed when an execution on a judgment against the insured is returned unsatisfied).

[¶ 13.] As to the exception for third party beneficiaries, SDCL 53–2–6 allows for a suit by a third party beneficiary of a contract. It provides that "[a] contract made expressly for the benefit of a third person may be enforced by him at any time before the parties thereto rescind it."

[W]henever two parties enter into an agreement that appears to have been made expressly for the benefit of a third party, and such agreement has a good and sufficient consideration, the agreement itself creates all the privity there need be between the person for whose benefit the agreement was entered into and the party assuming the obligation, and *an action at law should lie* regardless of whether there was any obligation existing between the other party to the agreement and the third party. But, before the third party can adopt the agreement entered into and recover thereon, he must show clearly that it was entered into with the intent on the part of the parties thereto that such third party should be benefited thereby. This intent might, in a given case, sufficiently appear from the contract itself,

but it must frequently be shown by other proof.

*Fry v. Ausman*, 29 S.D. 30, 36–37, 135 N.W. 708, 710 (1912) (emphasis original).

[¶ 14.] The issue we must decide is whether the instant contract of insurance contemplates Trouten and all others similarly situated as third party beneficiaries. The policy has two separate coverages: business liability and medical expenses. The medical expense coverage provides:

a. We will pay medical expenses as described below for *bodily injury* caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations; provided that:

    (1) The accident takes place in the *coverage territory* and during the policy period;

    (2) The expenses are incurred and reported to us within one year of the date of the accident; and

    (3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the Limit [sic] of Insurance [sic]. We will pay reasonable expenses for:

(1) First aid at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services. (emphasis original).

[¶ 15.] Trouten contends that, because the policy states that the insurer will make medical expense payments regardless of fault, the policy is written for his benefit and he is, ipso facto, a designated beneficiary entitled to sue the insurer to collect those payments. In support of his contention, Trouten cites *Harper v. Wausau Ins. Co.*, 56 Cal.App.4th 1079, 66 Cal.Rptr.2d 64 (1997) and *Donald v. Liberty Mut. Ins. Co.*, 18 F.3d 474 (7th Cir.1994).

[¶ 16.] In *Harper*, the injured party fell on the insured's property and then brought suit against the insurer for medical expenses under a commercial general liability policy. The medical expense portion of that policy read the same as the one in the instant case including the provision that the insurer would pay up to $5,000 for medical expenses for bodily injury regardless of fault. The issue was whether the injured party was a third party beneficiary under the terms of the insurance policy and in light of California Civil Code § 1559. That provision, like SDCL 53–2–6, stated that " '[a] contract made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it.' " *Harper*, 56 Cal.App.4th at 1086, 66 Cal.Rptr.2d at 68. In speaking of § 1559, the California court noted that it "excludes enforcement of a contract by persons who are only incidentally or remotely benefited by the agreement." *Id.* We agree with this statement since both statutes require that the contract be made "expressly for the benefit of a third person."

[¶ 17.] In finding that the injured party in *Harper* was a third party beneficiary, the *Harper* court reasoned:

Here, the insurance policy contained a liability provision based on fault ("Coverage A") and a medical payment provision, based on injury on the property ("Coverage C"). The express language of "Coverage C" plainly indicates it is meant to directly confer a benefit upon third parties who are injured on the

owner's property. The payment is premised on the happening of the event and is *not* premised on fault. Thus, the insurer undertook a separate and direct obligation to pay to the medical expenses of any persons injured on the owner's property regardless of its insured's negligence. Accordingly, the payments were plainly intended to directly benefit plaintiff and were not incidental or remote.

*Harper,* 56 Cal.App.4th at 1090, 66 Cal. Rptr.2d at 70. (emphasis original).

[¶ 18.] As authority for its conclusion, the *Harper* court cited *Donald, supra; Hunt v. First Ins. Co. of Hawaii, Ltd.,* 82 Hawai'i 363, 922 P.2d 976 (App.1996); and *Desmond v. American Ins. Co.* 786 S.W.2d 144 (Mo.Ct.App.1989). In each of these cases, the court held that the injured person qualified as a third party beneficiary under the medical payment benefit provision of the property owner's insurance policy and could, therefore, maintain a direct action against the owner's insurance company for medical benefits. *Donald* and *Desmond* are of particular note since the medical expense coverage provisions of the respective insurance policies read the same as the provisions of the instant policy including the no fault language.

[¶ 19.] The *Harper* court also quoted from Appleman on Insurance Law and Practice. The quotation merits repetition since it analyzes medical payment provisions in commercial and homeowner liability policies.

"Medical provisions of liability, or homeowner's, policies are a form of minimal group accident insurance provided at minimal cost with a named insured as the entity through whom the coverage is issued.... Generally, medical payment clauses are considered to constitute separate accident insurance coverage. Such coverage is divisible from the remainder of the policy, and creates a direct liability to the contemplated beneficiaries. The purpose is to grant peace of mind and create a fund for the payment of medical services so that those injured will not necessarily be contemplating how to impose liability upon the insured. And, with this in mind, a broad and liberal interpretation will be given. Such provision is the separate obligation of the insurer, independent of its obligation to pay sums of money as damages under the liability features of the contract. It has no relevance to the financial responsibility law. Nor is liability for such payment in any way dependent upon negligence of the insured...."

*Harper,* 56 Cal.App.4th at 1089–1090, 66 Cal.Rptr.2d at 70 (quoting 8A, Appleman, Insurance Law and Practice, § 4902, pp. 228–230 (fns omitted)).[2]

**2.** At § 4902.05, Appleman goes on to state:

"Medical payments provisions are found in almost every type of liability insurance. Thus, they appear in contracts of public liability coverage, ... (owner's, landlord's and tenants), contractor's, garage, and homeowner's, as well as comprehensive personal liability and sports coverage. The purpose is not only the salutary one of alleviating the mind of the one injured from concern over resources with which to pay such obligations, but to dissuade the one injured from thinking up theories upon which to sue the insured. And since the reduction of litigation is a desirable objective, certainly that is not improper. In contrast to automobile coverage, this provision is not designed to protect the insured from his legal liability but to insure the payment of medical expenses. It does not affect the liability limits, although ... the two may impinge upon each other. The policy may limit the class of persons to whom such coverage is applicable."

*Harper,* 56 Cal.App.4th at 1091, 66 Cal. Rptr.2d at 71 (quoting 8A, Appleman, Insurance Law and Practice, § 4902.05, pp. 232–233).

[¶ 20.] In response to the holdings in *Harper, Donald, Hunt* and *Desmond,* Heritage argues that we should follow the holding in *Zegar v. Sears Roebuck and Co.*, 211 Ill.App.3d 1025, 570 N.E.2d 1176, 156 Ill.Dec. 454 (1991). In *Zegar,* a patron slipped and fell in a Sears store and brought a direct action against Sears' insurer, Allstate, to recover medical expenses under a general liability policy containing a no fault provision under Coverage C. The Illinois court recognized

> that although in some respects Zegar may be viewed as a third party beneficiary of the contract between the insured and the insurer, the coverage provisions of an insurance policy are primarily for the benefit of the contracting parties and only incidentally for injured claimants.

*Zegar,* 156 Ill.Dec. 454, 570 N.E.2d at 1179.

[¶ 21.] To illustrate the contractual relationship between the insured and the insurer, the court then referred to the following policy provisions: Sears' obligation to timely notify Allstate of an occurrence; Sears' obligation to cooperate in the investigation, defense or settlement of a claim or suit; the fact that Sears was not allowed to voluntarily assume any obligation or expense, other than first aid, without Allstate's consent; and the "Legal Action Against Us" provision. The insurance policy in the instant case has the same conditions as those found in *Zegar* including the "Legal Action Against Us" clause. As in *Zegar* the policy in issue provides:

> 4. Legal Action Against Us
>
> No person or organization has a right under this policy:
>
> > a. To join us as a party or otherwise bring us into a *suit* asking for damages from an insured; or

> > b. To sue us on this policy unless all of its terms have been fully complied with.
>
> A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial, but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative. (emphasis original).

[¶ 22.] Finding that the injured patron had no right to bring a direct action, the *Zegar* court stated:

> In our opinion, nothing in the insurance policy states or strongly suggests that a claimant may maintain a direct action for medical expenses without regard to the resolution or [sic] of his or her potential claim against the insured for bodily injuries. We conclude that absent an express or clearly implied right to sue Allstate directly for the medical expenses under Coverage C, Zegar and the alleged class of persons injured at Sears' stores cannot maintain an action to recover medical expenses directly from Allstate, at least until after a settlement, adjudication, or release of claim against Sears has been secured.

*Zegar,* 156 Ill.Dec. 454, 570 N.E.2d at 1180.

[¶ 23.] The proper disposition of this case is better served by following the rationale set forth in *Zegar.* In *Zegar,* the court stated that "absent an express or clearly implied right to sue [an insurer] directly for the medical expenses, [an injured person] cannot maintain an action to recover medical expenses directly from [insurer], at least until after settlement, adjudication, or release of claim[.]" *Zegar,* 156

Ill.Dec. 454, 570 N.E.2d at 1180. *Zegar* was based on the fundamental rule that the legislative public policy established in that jurisdiction provided that an insurer cannot be sued directly without first obtaining a judgment against the insured.

[¶ 24.] The legislative public policy of South Dakota also prohibits a similar direct action against the insurer. SDCL 58–23–1 provides:

> All liability insurance policies issued in this state shall provide in substance that if an execution *upon any final judgment* in an action brought by the injured or by another person claiming, by, through, or under the injured, is returned unsatisfied, then an action may be maintained by the injured, or by such other person against the insurer under the terms of the policy for the amount of any judgment recovered in such action, not exceeding the amount of the policy, and every such policy shall be construed to so provide, anything in such policy to the contrary notwithstanding. (emphasis added)

Until the legislature enacts a statute, which permits direct action against an insurer, this Court declines to participate in judicially legislating such a public policy. By allowing this action to proceed would, in essence, provide for a potential for multiplicity of lawsuits, i.e., a direct claim against the insurer and a tort claim against the insured, which both arise out of the same incident.

[¶ 25.] Therefore, we reverse the trial court as to issue one.

[¶ 26.] KONENKAMP and GILBERTSON, Justices, concur.

[¶ 27.] MILLER, Chief Justice, and JOHNS, Circuit Judge, dissent on Issue One.

JOHNS, Circuit Judge, writing for the majority on Issue Two.

## ISSUE TWO

[¶ 28.] **Whether Trouten can seek punitive damages by pursuing a bad faith breach of insurance contract action against Heritage?**

[¶ 29.] Punitive damages are not recoverable for breach of contract unless the "complaining party can prove an independent tort that is separate and distinct from the breach of the contract." *Grynberg v. Citation Oil & Gas Corp.*, 1997 SD 121, ¶ 18, 573 N.W.2d 493, 500. Trouten has sought punitive damages against Heritage by alleging the tort of bad faith breach of the insurance contract. We must decide whether we will recognize this cause of action when a third party beneficiary of a general liability policy seeks medical payment benefits from the insurer.

[¶ 30.] In every contract there is "an implied covenant of good faith and fair dealing which prohibits either contracting party from preventing or injuring the other party's right to receive the agreed benefits of the contract." *Garrett v. BankWest, Inc.*, 459 N.W.2d 833, 841 (S.D.1990) (citing Restatement (Second) of Contracts, § 205 (1981); 3 A. Corbin, *Contracts* § 541 at 97 (1960); 5 S. Williston, *A Treatise on the Law of Contracts* § 670, at 159 (3rd ed 1961)). This implied covenant of good faith is a principle of contract law and, with the exception of insurance contracts, we have consistently refused to recognize an independent tort action for its breach. *Garrett*, 459 N.W.2d at 842; *McKie v. Huntley*, 2000 SD 160, 620 N.W.2d 599; *Genetics Research v. J K Mill–Iron Ranch*, 535 N.W.2d 839, 843 (S.D.1995); *Nelson v. WEB Water Development Ass'n, Inc.*, 507 N.W.2d 691, 697 (S.D.1993). *See also Helmbolt v. LeMars Mut. Ins. Co.*, 404 N.W.2d 55 (S.D.1987);

Crabb v. National Indemnity Company, 87 S.D. 222, 205 N.W.2d 633 (1973); Kunkel v. United Security Ins. Co. of New Jersey, 84 S.D. 116, 168 N.W.2d 723 (1969); Annotation, Reliance on, or Rejection of, Advice of Counsel as Factor Affecting Liability in Action Against Liability Insurer for Wrongful Refusal to Settle Claim, 63 ALR3d 725 (1975).

[¶ 31.] The case of Egan v. Mutual of Omaha Ins. Co., 24 Cal.3d 809, 169 Cal. Rptr. 691, 620 P.2d 141 (1979), contains a good analysis why an insured can recover punitive damages against his or her insurer for bad faith breach of an insurance contract.

[California] Civil Code § 3294 provides: "In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, express or implied, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant."[3]

\* \* \*

In the present context, the principal purpose of § 3294 is to deter acts deemed socially unacceptable and, consequently, to discourage the perpetuation of objectionable corporate policies.... Traditional arguments challenging the validity of exemplary damages lose force when a punitive award is based on this justification. The special relationship between the insurer and the insured illustrates the public policy considerations that may support exemplary damages in cases such as this.

As one commentary has noted, "The insurer's obligations are ... rooted in their status as purveyors of a vital service labeled quasi-public in nature. Suppliers of services affected with a public interest must take the public's interest seriously, where necessary placing it before their interest in maximizing gains and limiting disbursements.... [A]s a supplier of a public service rather than a manufactured product, the obligations of insurers go beyond meeting reasonable expectations of coverage. The obligations of good faith and fair dealing encompass qualities of decency and humanity inherent in the responsibilities of a fiduciary. Insurers hold themselves out as fiduciaries, and with the public's trust must go private responsibility consonant with that trust." (Goodman & Seaton, Foreword: Ripe for Decision, Internal Workings and Current Concerns of the California Supreme Court (1974) 62 CalLRev 309, 346–347.) Furthermore, the relationship of insurer and insured is inherently unbalanced; the adhesive nature of insurance contracts places the insurer in a superior bargaining position. The availability of punitive damages is thus compatible with recognition of insurers' underlying public obligations and reflects an attempt to restore balance in the contractual relationship. (Hirsch et al., Strict Liability: A Response to the Gruenberg–Silberg Conflict Regarding Insurance Litigation Awards (1975) 7

3. § 3294 was originally enacted in 1872. South Dakota's comparable statute, SDCL 21–3–2, was first enacted in 1877. § 21–3–2 provides:
In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, or in any case of wrongful injury to animals, being subjects of property, committed intentionally or by willful and wanton misconduct, in disregard of humanity, the jury, in addition to the actual damage, may give damages for the sake of example, and by way of punishing the defendant.

Sw UL Rev 310, 326; Comment, *Egan v. Mutual of Omaha Insurance Co.: The Expanding Use of Punitive Damages in Breach of Insurance Contract Actions* (1978) 15 San Diego LRev 287, 298–301; Note, *Contracting for Punitive Damages: Fletcher v. Western National Life Insurance Company* (1971) 4 Loyola LAL Rev 208, 219–224.)

*Egan,* 169 Cal.Rptr. at 696–697, 620 P.2d at 146 (some citations omitted).

[¶ 32.] We have long recognized that "[c]onduct that is merely a breach of contract is not a tort. The contract, however, may establish a *relationship* demanding the exercise of proper care and acts and omissions in performance may give rise to a tort liability." *Weeg v. Iowa Mutual Insurance Company*, 82 S.D. 104, 109–110, 141 N.W.2d 913, 916 (1966)(emphasis added), (citing *Smith v. Weber*, 70 S.D. 232, 16 N.W.2d 537 (1944)).[4] Although we have recognized a special relationship between insureds and insurers, *Kunkel, supra,* and between employees and workers' compensation insurance carriers, *Matter of Cert. of a Question of Law*, 399 N.W.2d 320 (S.D.1987), we fail to see where the relationship between the parties here is any different than it is in any other third party beneficiary contract. Furthermore, the relationship of the insurer to the insured is akin to that of a fiduciary since it must give at least as much consideration to the insured's interests as it does to its own. *Long v. McAllister*, 319 N.W.2d 256, 262 (Iowa 1982). Because of this fiduciary duty to the insured, the insurer stands in the shoes of the insured and has an adversarial relationship to the victim. *Id.* As such, the insurance company cannot be required to serve two masters who have antagonistic interests.

[¶ 33.] In summary, we hold that an injured party claiming medical expense coverage under a general liability insurance policy may not hold the insurer liable in tort for bad faith breach of an obligation to pay. We do so for two reasons. First, the injured person does not have a relationship with the insurer that justifies such a result on public policy grounds. Second, the insurer's first duty is to its insured and not to the injured party. We decline to place the insurer in the impossible position of having to choose its loyalties since the insured can always be sued by the injured party for any and all damages flowing from his actions. *Sperry v. Sperry*, 990 P.2d 381 (Utah 1999). Therefore, we reverse the trial court on this issue.

[¶ 34.] Reversed and remanded.

[¶ 35.] MILLER, Chief Justice, and AMUNDSON, KONENKAMP and GILBERTSON, Justices, concur.

[¶ 36.] JOHNS, Circuit Judge, for SABERS, Justice, disqualified.

JOHNS, Circuit Judge, (dissenting on Issue One).

[¶ 37.] After considering the authorities submitted by the parties, I would submit that Trouten's line of authority is more persuasive and that, under the language of the policy, Trouten is a third party beneficiary. First, the language of the "Legal Action Against Us" provision does not say that Trouten cannot bring a direct action for medical expenses. Rather, it clearly states that he can bring a direct action if the policy provisions are complied with. The only relevant policy provisions are those that place obligations on the insured

---

4. In *Smith,* 70 S.D. at 236, 16 N.W.2d at 539, we said: "It may be conceded that tort usually signifies a breach of legal duty independent of contract. But such breach of duty may arise out of a relation or state of facts created by contract."

which obligations the injured party would have to establish upon bringing the action.[5]

[¶ 38.] Second, the insuring agreement provision states that the insurer *"will make the [medical expense] payments regardless of fault."* (emphasis added). It does not say that it is within the insurer's unbridled discretion to make the payments. It does not follow, however, that the injured party is relieved from proving that he or she was actually hurt on the insured premises. The no fault clause simply provides that the injured person does not have to prove negligence upon the part of the insured in order to receive medical expense payments.

[¶ 39.] Third, I agree with the analysis that medical expense payment provisions in liability policies provide separate insurance coverage divisible from the remainder of the policy. As such, these provisions create a fund for payment of medical services for those injured persons who may not want to impose liability upon the insured for any amounts in excess of the medical expense limits.

[¶ 40.] Fourth, the coverage is designed to benefit a clearly ascertainable group of persons. As such, they are not remote or incidental beneficiaries and, in many instances, they may well benefit as much or more than the insured. "Incidental is defined as: '[d]epending upon or appertaining to something else as primary; something necessary, appertaining to, or depending upon another which is termed the principal; something incidental to the main purpose.'" *Robinson & Muenster As-*

*socs. v. Dept. of Rev.*, 1999 SD 132, ¶ 31, 601 N.W.2d 610, 617 (Sabers, J., dissenting) (quoting Black's Law Dictionary 762 (6th ed 1990)). Injured persons certainly are more than just incidental beneficiaries of the medical expense benefit coverage although they are incidental beneficiaries of the liability coverage.

[¶ 41.] Based upon the foregoing, I would hold that Trouten is a third party beneficiary under the terms of the medical benefit portion of the policy. As such, he is entitled to recover medical benefits up to the $5,000 maximum irrespective of whether he ever brings suit against the property owner and irrespective of whether he is successful in any such suit.

[¶ 42.] The insurance company has contractually bound itself to pay medical benefits to a person injured on the insured premises "regardless of fault." Since Trouten was allegedly injured on the insured premises, he should be able to prosecute this action without having to sue and recover against the insured on a liability theory. I would affirm the trial court on this issue.

[¶ 43.] MILLER, Chief Justice, joins this dissent as to Issue One.

---

5. This is not to imply that there may not be other matters which the injured party must establish. For example, under the policy, the injured person must submit to examinations by the insurer's physicians.