2003 SD 54

Richard H. CLEVELAND and Carolyn Cleveland, Larry Anderson and Carol Anderson, Bob Tridle and John Tridle, Jim Mattson, Roberta Raines, Dan Regan and Trudy Regan, Michael Donner and Darlene Donner, William Boyer and Roxanne Boyer, Ed Odson and Ellen Odson, Don Sanders and Patricia Sanders, Debra Bieber, Roberta Olson, Brian Nelson and Melody Nelson, Ramona Hickens, Suntina Marta, and Lorraine Wiswell, Dale Larson and Renee Larson, Brian Meade, Norman Hertel and Mary Lou Hertel, Thomas Morey and Donna Morey, Gina Crain, Glen Bauernfeind, Ronald Manseau, O.A. Henderson, Jr., and Sara Jane Henderson, individually and on behalf of Mile High Apartments, a partnership, Plaintiffs,

v.

City of Lead, a municipal corporation, Defendant,

BDL ENTERPRISES, INC., Defendant and Appellant,

FMG, Inc., Defendant and Appellee.

Richard H. Cleveland and Carolyn Cleveland, Larry Anderson and Carol Anderson, Bob Tridle and John Tridle, Jim Mattson, Roberta Raines, Dan Regan and Trudy Regan, Michael Donner and Darlene Donner, William Boyer and Roxanne Boyer, Ed Odson and Ellen Odson, Don Sanders and Patricia Sanders, Debra Bieber, Roberta Olson, Brian Nelson and Melody Nelson, Ramona Hickens, Suntina Marta, and Lorraine Wiswell, Dale Larson and Renee Larson, Brian Meade, Norman Hertel and Mary Lou Hertel, Thomas Morey and Donna Morey, Gina Crain, Glen Bauernfeind, Ronald Manseau, O.A. Henderson, Jr., and Sara Jane Henderson, individually and on behalf of Mile High Apartments, a partnership, Plaintiffs and Appellants,

v.

City of Lead, a municipal corporation, Defendant,

BDL Enterprises, Inc., Defendant,

and

FMG, Inc., Defendant and Appellee.

Nos. 22409, 22467.

Supreme Court of South Dakota.

Considered on Briefs March 24, 2003.

Decided May 14, 2003.

Kenneth E. Barker, Michael P. Reynolds, John W. Burke of Barker, Wilson, Reynolds & Burke, Belle Fourche, for plaintiffs and appellants.

Jerry D. Johnson of Banks, Johnson, Colbath & Kerr, Rapid City, for defendant and appellant BDL.

Gary D. Jensen of Beardsley, Jensen and Von Wald, Prof. LLC, Rapid City, for defendant and appellee FMG.

GILBERTSON, Chief Justice.

[¶ 1.] This dispute arises over the construction of the Twin City Mall in Lead, South Dakota. In constructing the Mall, BDL, the owner of the Mall, removed part of a slope of a hill, which provided lateral support to the Homeowners' property. The Homeowners brought suit against BDL and FMG, the soil engineers, alleging that removal of the slope caused ground movement, which in turn caused damage to their property. BDL filed a cross-claim against FMG for indemnity or contribution. The trial court granted summary judgment to FMG on both the Homeowners' claims and BDL's cross-claim. We affirm.

**FACTS AND PROCEDURE**

[¶ 2.] In 1985, BDL began making plans for the construction of the Twin City Mall in Lead, South Dakota. The chosen site of the mall was located at the bottom of a steep slope. Behind the mall, resting on the hillside, is the Bender Park Neighborhood, which consists of First, Second and Third Streets. The construction of the mall entailed cutting into the slope.

Therefore, BDL hired FMG to perform a geotechnical exploration of the proposed site to determine whether it was safe to proceed.

[¶ 3.] In a report to BDL, FMG opined that "the configuration's stability is marginal, although theoretically safe from mass failure." Soon after, construction of the Mall began and was substantially completed by May 1, 1987. As early as the fall of 1986, a Bender Park resident noticed a crack on the ground of Third Street. Thereafter, many other problems were reported in the Bender Park Neighborhood, such as large cracks in foundation walls and movement of homes. There were also sewer and water main breaks in the area.

[¶ 4.] The Third Street Committee was then formed by the city. This Committee was organized to address concerns and monitor the situation. The City of Lead, BDL, and the homeowners had representatives on the Committee. At the meeting held on July 23, 1987, a representative from FMG, Rick Baker, was present to answer questions concerning the cause of the ground movement. Baker stated that "it was his opinion that the cut on the hillside below First Street was not the cause of the movement in the area."

[¶ 5.] The Committee publicly met four times and several homeowners remained convinced that the construction of the Mall caused the ground movement. However, after the city's monitoring of the movement through September of 1990 revealed nothing significant, the monitoring was discontinued.

[¶ 6.] The winter of 1993 and spring of 1994 brought with them a huge amount of rainfall and snow. Due to the extreme amount of melting and moisture, drainage increased and the hill began to move. The Mall also showed a significant amount of movement. BDL retained GME Consul-

tants of Minneapolis to investigate the cause of the slope instability and the movement of the Mall.

[¶ 7.] GME advised that the Mall be evacuated and that remedial measures be put in place. The remedial measures included digging long and deep trenches along the Mall's parking lot, which was below First Street and up on Third Street. The trenches were completed in 1996 at a cost of nearly $4,000,000. It is disputed by the parties whether movement continues.

[¶ 8.] Thereafter, in 1998, thirty-three homeowners in the Bender Park Neighborhood filed suit against BDL and FMG. The Plaintiffs asserted six counts of wrongdoing by BDL and FMG for their part in the development, design, and construction of the Twin City Mall. Essentially, the Plaintiffs allege that BDL and FMG failed to design, engineer, and construct the Mall in such a way that would have prevented removal of the slope of the hill. They allege that this hill provided lateral support for their real property located on the hillside behind the Mall. Defendant BDL filed a cross-claim against Defendant FMG seeking indemnity or contribution. After four years of discovery, BDL and FMG moved for summary judgment.

[¶ 9.] After hearing oral arguments on the motion, the trial court denied summary judgment to BDL but granted summary judgment to FMG on Homeowners' claims and Defendant BDL's cross-claims. The trial court found that Homeowners' claims against FMG were barred under the ten-year limitation period prescribed in SDCL 15–2A–3. Likewise, BDL's cross-claim against FMG was found to be barred under the ten-year limitation period found in SDCL 15–2A–3. Since that time, the Plaintiff Homeowners and BDL have entered into a settlement. Further, BDL has assigned its claims against FMG to the Plaintiff Homeowners. FMG has filed an objection to this assignment. However, neither the assignment nor the objection to the assignment changes the substantive issues involved in this appeal.

[¶ 10.] On this appeal, we are asked to review the following:

1. Whether the trial court properly dismissed Homeowners' claim that fraudulent concealment on the part of FMG tolled the ten-year statute of limitation contained in SDCL 15–2A–3.

2. Whether BDL's constitutional rights were violated when the trial court, under the terms of SDCL 15–2A–3, dismissed BDL's cross-claim against FMG for indemnity or contribution.

## STANDARD OF REVIEW

[¶ 11.] According to *Holzer v. Dakota Speedway, Inc.,* 2000 SD 65, ¶ 8, 610 N.W.2d 787, 791–792, the standard of review for summary judgment is as follows:

Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." SDCL 15–6–56(c). We will affirm only when there are no genuine issues of material fact and the legal questions have been correctly decided. *Bego v. Gordon,* 407 N.W.2d 801, 804 (S.D.1987). All reasonable inferences drawn from the facts must be viewed in favor of the non-moving party. *Morgan v. Baldwin,* 450 N.W.2d 783, 785 (S.D.1990). The burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law. *Wilson v. Great N. Ry. Co.,* 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968). "Summary judg-

ment will be affirmed if there exists *any* basis which would support the trial court's ruling." *Wolff v. SD Game, Fish and Parks Dept.*, 1996 SD 23, ¶ 32, 544 N.W.2d 531, 537 (citing *St. Paul Fire & Marine Ins. Co. v. Schilling*, 520 N.W.2d 884, 886 (S.D.1994)) (emphasis added).

[¶ 12.] When reviewing the constitutionality of a statute, our review is de novo. *Green v. Siegel, Barnett & Schutz*, 1996 SD 146, ¶ 7, 557 N.W.2d 396, 398 (citing *Kyllo v. Panzer*, 535 N.W.2d 896, 897 (S.D. 1995)).

## ANALYSIS AND DECISION

[¶ 13.] **1. Whether the trial court properly dismissed Homeowners' claim that fraudulent concealment on the part of FMG tolled the ten-year statute of limitation contained in SDCL 15–2A–3.**

[¶ 14.] FMG contends that it is entitled to summary judgment because the limitation period in the applicable statute of limitation has run. Specifically, SDCL 15–2A–3 provides:

> No action to recover damages for any injury to real or personal property, for personal injury or death arising out of any deficiency in the design, planning, supervision, inspection and observation of construction, or construction, of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of such injury or death, may be brought against any person performing or furnishing the design, planning, supervision, inspection and observation of construction, or construction, of such an improvement more than ten years after substantial completion of such construction. The date of substantial completion shall be determined by the date when construction is sufficiently completed so that the owner

or his representative can occupy or use the improvement for the use it was intended.

[¶ 15.] However, Plaintiff Homeowners argue that the facts supporting their causes of action were fraudulently concealed by FMG. Therefore, they argue SDCL 15–2A–7 applies. This statute reads:

> The limitations contained in this chapter may not be asserted as a defense by any person who is guilty of fraud, fraudulent concealment, fraudulent misrepresentations or willful or wanton misconduct, in furnishing the design, planning, supervision, inspection and observation of construction, or construction, of improvements to real property.

[¶ 16.] The trial court granted summary judgment to FMG despite Plaintiff Homeowners' claim that fraudulent concealment tolled the ten-year statute of limitation. The trial court based its decision on three grounds. These bases were that there was no confidential relationship between FMG and the Homeowners and therefore, FMG did not have the duty to disclose; the statements by FMG were expression of opinions, rather than affirmations of fact; and FMG disclosed their reports and opinions with the members of the Third Street Committee in 1987. While any of the three rationales provides an independent basis for affirmance, we will examine each separately.

[¶ 17.] *Whether FMG had a confidential relationship with Homeowners.*

[¶ 18.] The trial court found that there was no confidential relationship between FMG and Plaintiff Homeowners. Further, it correctly found that in the absence of a confidential relationship, there was no duty for FMG to disclose information to the Homeowners. "In the absence of a fiduciary relationship, fraudulent con-

cealment does not exist simply because a cause of action remains undiscovered, but only when the defendant affirmatively prevents discovery." *Purdy v. Fleming*, 2002 SD 156, ¶ 20, 655 N.W.2d 424, 431 (citing *Bruske v. Hille*, 1997 SD 108, ¶ 19, 567 N.W.2d 872, 879); *see also Koenig v. Lambert*, 527 N.W.2d 903, 905–06 (S.D.1995); *Conway v. Conway*, 487 N.W.2d 21, 23 (S.D.1992).[1] "Fiduciary duties, which often produce the duty to disclose, 'are not inherent in normal arm's-length business relationship, and arise only when one undertakes to act primarily for another's benefit.'" *Schwaiger v. Mitchell Radiology*, 2002 SD 97, ¶ 19, 652 N.W.2d 372, 380 (citing *Dinsmore v. Piper Jaffray*, 1999 SD 56, ¶ 20, 593 N.W.2d 41, 47). Whether a fiduciary duty exists and the scope of that duty are questions of law for the court. *Purdy*, 2002 SD 156, ¶ 18, 655 N.W.2d at 431 (additional citations omitted).

[¶ 19.] Clearly FMG's professional services were hired by BDL and not the Homeowners. Nevertheless, Homeowners argue that there was a confidential relationship between Rick Baker of FMG and them because Homeowners placed their "trust and confidence" in this representative from FMG at the Third Street Committee meeting. The minutes for the Third Street Committee meeting held on July 23, 1987, reflect that a representative from BDL announced the presence of Baker, the soil expert, to "answer some of the questions that were asked at the last meeting." Further, they argue, the fact that Plaintiff Homeowners are laypersons and

Baker is an engineer with much technical expertise, "invited confidence."

[¶ 20.] We have defined a fiduciary relationship as one which "imparts a position of peculiar confidence placed by one individual in another. A fiduciary is a person with a duty to act primarily for the benefit of another." *Nelson v. WEB Water Development Ass'n, Inc.*, 507 N.W.2d 691, 698 (S.D.1993) (quoting *Garrett v. BankWest, Inc.* 459 N.W.2d 833, 837 (S.D. 1990)). In *High Plains Genetics Research, Inc. v. J.K. Mill–Iron Ranch*, 535 N.W.2d 839, 842 (S.D.1995), we stated that normally in a confidential relationship, the "property, interest, or authority of the other is placed in the charge of the fiduciary." (citations omitted.) When a fiduciary or confidential relationship is present, mere silence on the part of the fiduciary may support the doctrine of fraudulent concealment. *See Klinker v. Beach*, 1996 SD 56, ¶ 14, 547 N.W.2d 572, 576.

[¶ 21.] We find that no confidential or fiduciary relationship existed between FMG and the Homeowners. FMG was employed by BDL to conduct soil engineering work. FMG stood in the shoes of BDL and had an arms-length relationship to the Homeowners. *See Trouten v. Heritage Mut. Ins. Co.*, 2001 SD 106, ¶ 32, 632 N.W.2d 856, 864. "As such [FMG] cannot be required to serve two masters who have antagonistic interests." *See id.* The potential difficulties of expanding a fiduciary duty in this context were set forth in an examination of the relationship between an attorney and client in *Chem–Age Industries, Inc. v. Glover*, 2002 SD 122, ¶ 31, 652

---

1. We also had occasion to examine this concept in the earlier case of *Taggart v. Ford Motor Credit*, 462 N.W.2d 493 (S.D.1990). Therein we concluded "[t]he first clause of SDCL 20–10–2(3) imposes liability for suppression of a fact only on *'one who is bound to disclose'* the fact. This court has never im-

posed a duty to disclose information on parties to an arm's-length business transaction, absent an employment or fiduciary relationship." *Id.* at 499 (citing *Voeller v. Geisler*, 77 S.D. 96, 86 N.W.2d 395 (1957)) (emphasis in original).

N.W.2d 756, 769. Therein, we concluded expansion was precluded because:

(1) It would threaten the fiduciary's duty of loyalty to and effective representation of its client's interests;

(2) It would add responsibilities to non-clients creating a danger of conflicting duties with clients;

(3) The number of persons to whom a fiduciary might be accountable could be limitless; and

(4) It would imperil the fiduciary-client relationship.

*Id.* (citations omitted). Moreover, at no time did FMG hold itself out as being in charge of the Homeowners' property rights or in some manner representing their interests.

■ [¶ 22.] Having determined that no confidential relationship existed between FMG and the Homeowners, we next turn to whether FMG took affirmative steps to conceal the facts that supported Homeowners' causes of action. In *Klinker*, homeowners brought an action against the builders, alleging faulty workmanship in construction of the home. 1996 SD 56, ¶ 6, 547 N.W.2d at 574. Like the instant case, the homeowners in *Klinker* brought their cause of action after the ten-year limitation period had run, but alleged that fraudulent concealment by the builders tolled the statute of limitation. We stated that for fraudulent concealment to apply, in the absence of a confidential relationship, there must be some affirmative act or conduct on the part of defendant to prevent discovery of the cause of action. *Id.* ¶ 14, 547 N.W.2d at 576. In *Klinker*, we found "no question of material fact existing to support a claim the [builders] committed fraudulent concealment when they sold the home to the [homeowners]." *Id.* ¶ 17, 547 N.W.2d at 576. Likewise, in the case now before us, there exists no question of material fact that FMG committed affir-

mative acts of fraudulent concealment. Any claimed failures to disclose to Homeowners were at most omissions, not affirmative acts by FMG.

[¶ 23.] *Whether the statements made by FMG to Homeowners were expressions of opinions or facts.*

■ [¶ 24.] Alternatively, Homeowners allege that certain statements made by Baker, the representative from FMG, at the Third Street Committee Meeting, were "designed to prevent" Homeowners' discovery of their causes of action. The following passage is taken out of the minutes from the meeting which contains Baker's comments to the Committee:

"[Creep] movement is slow, but ongoing, on any hillside. It's natural," Baker stated. He stressed that there was a lot of inter-related things in this area too, such as watering, traffic, underground blasting, etc. He stated that it was his *opinion* that the cut on the hillside below First St. was not the cause of the movement in that area. (emphasis added).

[¶ 25.] The Homeowners go on to argue that despite telling the Homeowners that it was FMG's opinion that removal of the toe of the hill was not to blame for their homes' movements, "the true and complete concerns" that FMG had, as reflected in the internal memos and correspondence to BDL, "were facts that were not disclosed" to the Homeowners.

■ [¶ 26.] In order to be actionable, fraud must be based upon the misrepresentation of *material fact*. As we noted in *Klinker*:

Fraud has been defined as "a representation ... made as a statement of fact, which was untrue and known to be untrue by the party making it, or else

recklessly made; [and] made with intent to deceive and for the purpose of inducing the other party to act upon it." To be actionable fraud, a party must further "rely on it and [be] induced thereby to act to his injury or damage."

1996 SD 56, ¶ 13, 547 N.W.2d at 576 (quoting *Sander v. Wright*, 394 N.W.2d 896, 900–01 (S.D.1986) (Fosheim, J., concurring in result) (citation omitted)). FMG argues that Baker "made a professional, honest, and straight forward presentation to the Third Street Committee." Further, FMG asserts that its opinions have remained the same over the years; from the beginning until the present, FMG has expressed its opinion that construction of the mall is probably not related to the ground movement. While it had professional concerns about the possibility of soil movement prior to construction, after testing and construction, its opinion was that the building of the mall was not the source of the Homeowners' problems.

[¶ 27.] FMG's opinions cannot form the basis of a fraudulent concealment claim. FMG did not take any affirmative steps to hide the facts that supported Homeowners' cause of action. Moreover, there is no evidence that any of the Homeowners relied on anything that was said by Baker at the Third Street Committee Meeting. Significantly, in the 1980's many of the Homeowners remained convinced that construction of the Mall was the cause of the ground movement, even after Baker informed them that it was his personal opinion that cutting into the slope was not the cause. It appears from the record, that a cause of action could have been brought back in 1987, when the Committee began to meet. Prior to that time Homeowners were aware of cracks in the ground, in foundation walls, movement of homes and sewer and water breaks in their area. That was the reason for the creation of the Committee. The Homeowners were on notice then that there was a possible correlation between construction of the Mall and the ground movement.

[¶ 28.] *Whether the facts supporting Homeowners' claims were readily available to them.*

[¶ 29.] Finally, Homeowners argue that whether FMG made a complete disclosure to the members of the Third Street Committee is a question of fact, and therefore, summary judgment was improper. Basically, this argument focuses on the Third Street Committee meetings and the statements made by Baker, the representative from FMG. Essentially, this argument is the same argument made above.

[¶ 30.] The trial court found that "the reports and opinions of FMG were shared with members of the Third Street Committee in 1987. FMG's ... report findings were readily available during the summer of 1987." Additionally, because we have held that no confidential relationship existed between FMG and the Homeowners, then the Homeowners must prove that FMG took affirmative steps to hide the facts underlying the causes of action. The Homeowners are unable to do so.

[¶ 31.] For the foregoing reasons, we hold that the fraudulent concealment exception to SDCL 15–2A–3 does not apply to this case. As such, the Homeowners' claims against FMG are barred by the ten-year statute of limitation. There are no material issues of fact in question and therefore, summary judgment was properly granted to FMG.

[¶ 32.] **2. Were BDL's constitutional rights violated when the trial court, under the terms of SDCL 15–2A–3, dismissed BDL's cross-claim against FMG for indemnity or contribution.**

[¶ 33.] Pursuant to SDCL 15–2A–3, the trial court granted summary judgment to FMG on BDL's cross-claim

for indemnity or contribution. This statute provides that ". . . [no] . . . action for contribution or indemnity . . . may be brought . . . more than ten years after substantial completion of such construction." It is undisputed by the parties that the cross-claim was made after the expiration of the ten-year statute of repose [2] set out in SDCL 15–2A–3. Application of the express terms of SDCL 15–2A–3 requires dismissal of BDL's cross-claim against FMG. However, BDL, who has assigned this cause of action to Homeowners, alleges that the statute is unconstitutional in violation of Article VI, § 20 of the South Dakota Constitution,[3] our "open courts" provision, because it bars its cross-claim for contribution or indemnity before it has accrued.

[¶ 34.] In *Green*, 1996 SD 146, ¶ 7, 557 N.W.2d at 398, we addressed our standard of review for a challenge to the constitutionality of a statute. We stated:

'There is a strong presumption that the laws enacted by the legislature are constitutional and the presumption is rebutted only when it clearly, palpably and plainly appears that the statute violates a provision of the constitution. Further, the party challenging the constitutionality of a statute bears the burden of proving beyond a reasonable doubt that the statute violates a state or federal constitutional provision.'

(additional citations omitted.)

[¶ 35.] In *Daugaard v. Baltic Co-op Bldg. Supply Ass'n*, which the Homeowners rely on for support, several injured plaintiffs brought personal injury suits against Baltic Builders and other defendants after a propane explosion at the Baltic Elevator Company. 349 N.W.2d 419, 421–24 (S.D.1984). Ten years before the explosion, Baltic Builders had installed the two underground propane gas lines. The trial court dismissed the plaintiffs' complaints due to the six-year statute of limitation proscribed, in SDCL 15–2–9, which was SDCL 15–2A–3's predecessor. However, on appeal, the South Dakota Supreme Court found SDCL 15–2–9 and SDCL 15–2–12.1 unconstitutional. *Id.* at 427. In so holding, the Court, in a split decision, overruled *McMacken v. State*, 320 N.W.2d 131 (S.D.1982), and held that these statutes violated the "open courts" provision of the South Dakota Constitution. *Id.* at 424. It did so declaring that "[o]ur constitution, as enacted by our forefathers and occasionally amended, is solid core upon which all our state laws must be premised. Clearly and unequivocally, our constitution directs that the courts of this state shall be open to the injured and oppressed." *Id.* at 425.

[¶ 36.] More recent decisions by this Court have been in contrast to, and not supportive of, *Daugaard's* holding. *Knowles v. United States*, 1996 SD 10, ¶ 83, 544 N.W.2d 183, 203, upheld a medical malpractice cap as constitutional against an open courts challenge. We

---

**2.** According to *Peterson v. Burns*, 2001 SD 126, ¶ 41, 635 N.W.2d 556, 570, a statute of repose is one that "bars all actions after a specified period of time has run from the occurrence of some event . . ." Because the express words of SDCL 15–2A–3 limit direct claims, as well as claims for contribution or indemnity, to ten years after substantial completion, this statute operates as a statute of repose in this case because the claims were cut off before they accrued.

**3.** Article VI, § 20 of the South Dakota Constitution states:

All courts shall be open, and every man for an injury done him in his property, person or reputation, shall have remedy by due course of law, and right and justice, administered without denial or delay.

adopted the analysis of the United States Supreme Court originally authored in the same era in which our open courts provision was enacted (1889) as part of our South Dakota Constitution:

> A person has no property, no vested interest, in any rule of the common law ... Rights of property which have been created by the common law cannot be taken away without due process; but the law itself, as a rule of conduct, may be changed at the will, or even at the whim, of the legislature, unless prevented by constitutional limitations. Indeed, the great office of statutes is to remedy defects in the common law as they are developed, and to adapt it to changes of time and circumstance.

*Id.* ¶ 84, 544 N.W.2d at 203 (citing *Munn v. Illinois* 94 U.S. (4 Otto) 113, 134, 24 L.Ed. 77, 87 (1876)). This constitutional doctrine continues its viability. The " 'Constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object.' " *Id.* (citing *Duke Power Co. v. Carolina Environmental Study Group*, 438 U.S. 59, 88 n. 32, 98 S.Ct. 2620, 2638, 57 L.Ed.2d 595, 620) (quoting *Silver v. Silver*, 280 U.S. 117, 122, 50 S.Ct. 57, 58, 74 L.Ed. 221 (1929)).

[¶ 37.] Also in 1996, in *Klinker*, we applied SDCL 15–2A–3 to dismiss the plaintiff's case, which was brought after the ten-year limitation period. 1996 SD 56, ¶ 17, 547 N.W.2d at 576. In that case, we noted the South Dakota Legislature's findings in regard to SDCL ch 15–2A. These statements can be found in SDCL 15–2A–1.[4] Among these findings are that designers and contractors have no control over how property is used once construction is complete; and they have no right or opportunity to be made aware of how the property is being used and to take any action concerning maintenance or repairs.

[¶ 38.] The same year we decided *Knowles and Klinker*, this Court also decided *Green*, 1996 SD 146, 557 N.W.2d 396.

---

4. The Legislature finds that subsequent to the completion of construction, persons involved in the planning, design and construction of improvements to real estate lack control over the determination of the need for, the undertaking of and the responsibility for maintenance, and lack control over other forces, uses and intervening causes which cause stress, strain, wear and tear to the improvements and, in most cases, have no right or opportunity to be made aware of or to evaluate the effect of these forces on a particular improvement or to take action to overcome the effect of these forces. Therefore, it is in the public interest to set a point in time following the substantial completion of the project after which no action may be brought for errors and omissions in the planning, design and construction of improvements to real estate, whether these errors and omissions have resulted or may result in injury or not, unless the person involved in the planning, design and construction of the improvements was guilty of fraud, fraudulent concealment, fraudulent misrepresentation, willful or wanton misconduct, or unless the person involved in the planning, design and construction of improvements to real estate expressly warranted or guaranteed the improvement for a longer time period. This legislation is determined to be in the public interest and in the interest of equating the rights of due process between the prospective litigants in the areas of planning, design and construction of improvements to real property in an equitable manner, while adjusting the standard of care so that persons attempting to bring actions under a general standard of care against persons involved in the planning, design and construction of improvements to real estate only have ten years to bring actions following substantial completion against those involved in the planning, design and construction, and following that ten-year time period actions may be brought against such persons only if they are guilty of fraud, fraudulent concealment, fraudulent misrepresentation, breach of express warranties or guarantees, or willful or wanton misconduct in the planning, design and construction of improvements to real estate.

In *Green,* we upheld the constitutionality of the legal malpractice action statutes of repose provided in SDCL 15–2–13 and 15–2–14.2. *Id.* ¶ 30, 557 N.W.2d at 404. We stated that "the law of this state provides that legal malpractice actions accrue when the alleged malpractice occurs," not when it is discovered. *Id.* As a result, the plaintiffs' claims were barred.

[¶ 39.] In *Green,* we cited to the North Carolina Supreme Court, which upheld a statute similar to the one at issue in this case. In finding its statute constitutional, that court stated:

> For the legislature has not absolutely abolished all claims against builders and designers arising out of improvements they built or designed. Rather, it has established a time period beyond which such claims may not be brought even if the injury giving rise to the claim does not occur until the time period has elapsed.
>
> We are confident that this condition to the legal cognizability of the claim does not violate the constitutional guarantee for that every 'injury done' there shall be a 'remedy.' The 'remedy' constitutionally guaranteed 'for an injury done' is qualified by the words 'by due course of law.' This means that the remedy constitutionally guaranteed must be one that is legally cognizable. The legislature has the power to define the circumstances under which a remedy is legally cognizable and those under which it is not.

*Green,* 1996 SD 146, ¶ 26, 557 N.W.2d at 403 (quoting *Lamb v. Wedgewood South Corp.,* 308 N.C. 419, 444, 302 S.E.2d 868, 882 (1983)).

[¶ 40.] Moreover, we examined the historical context in which the open courts provision was enacted in South Dakota in 1889. We upheld the challenged statute as: (1) there is nothing in the constitutional debates of 1885 and 1889 supportive of the thesis that the open courts provision strikes down limitations upon actions, *Green,* 1996 SD 146, ¶ 17, 557 N.W.2d at 401; (2) statute of limitation and repose existed in this jurisdiction prior to 1889 and after statehood none of them were repealed with the enactment of the open courts provision, *Id.* ¶ 18, 557 N.W.2d at 402; and (3) early case law such as *Moberg v. Scott,* 38 S.D. 422, 161 N.W. 998 (1917), and *McClain v. Williams,* 10 S.D. 332, 73 N.W. 72 (1897), provided no support for a *Daugaard* type interpretation. *Id.* ¶¶ 19–20, 557 N.W.2d at 402.

[¶ 41.] In *Wegleitner v. Sattler,* 582 N.W.2d 688 (S.D.1998), we compared our open courts analysis in *Green* to that of surrounding states which also have open courts provisions in their constitutions. Typical was that of Montana:

> [T]he Constitution was written and adopted in the light of the conditions and well-known laws ... as they then existed in Montana, and must be construed accordingly. The salutary declarations of section 6 simply recognize fundamentals of government dear to the American heart; they assert nothing new in the way of constitutional declaration, and clearly were not intended to affect statutory laws then existing.

1998 SD 88, ¶ 31, 582 N.W.2d at 698 (citing *Conley v. Conley,* 92 Mont. 425, 15 P.2d 922, 926 (1932)).[5] In *Wegleitner,* we upheld a statutory limitation on actions for

---

5. We also cited to *Sigman v. Seafood Ltd. Partnership I,* 817 P.2d 527 (Colo.1991); *Allen v. Pioneer Press Co.,* 40 Minn. 117, 41 N.W. 936 (1889); *Pullen v. Novak,* 169 Neb. 211, 99 N.W.2d 16 (1959); *Malin v. La Moure County* 27 N.D. 140, 145 N.W. 582 (1914); *In re Lee,* 64 Okla. 310, 168 P. 53 (1917); *Neuhaus v. Clark County,* 14 Wis.2d 222, 111 N.W.2d 180 (1961); and *Flanders v. Town of Merrimack,* 48 Wis. 567, 4 N.W. 741 (1880).

liquor violations against an open courts challenge. 1998 SD 88, ¶ 35, 582 N.W.2d at 699.

[¶ 42.] In *Vilhauer v. Horsemens' Sports, Inc.*, 1999 SD 93, 598 N.W.2d 525, a rodeo worker brought a personal injury suit against the rodeo organizer, and various other individuals. We reversed the trial court's decision that SDCL 42–11–1(6)(e), which provides a limited form of partial immunity to those who qualify as an equine activity sponsor, violated the open courts provision of the state's constitution. 1999 SD 93, ¶ 26, 598 N.W.2d at 531–32. Based upon *Knowles; Green and Wegleitner*, we concluded that the proper parameters of the open courts provision are as follows:

> Given the above nature of the understanding of the drafters of the constitutional provisions and its contemporary judicial interpretations, it is clear that these provisions in South Dakota and surrounding states were meant to allow unhindered access to the courthouse by a person who had a valid cause of action based on existing statute or the common law, timely and properly brought, who then would be allowed to present their case to a human fact finder. In other words under those conditions, a litigant was guaranteed its day in court ... [In past cases we have] found no basis for a claim that Art. VI, § 20 could by itself become a sword to create a cause of action or become a shield to prohibit statutorily recognized barriers to recovery such as a statute of limitations.

*Vilhauer*, 1999 SD 93, ¶ 17, 598 N.W.2d at 529 (quoting *Wegleitner*, 1998 SD 88, ¶ 33, 582 N.W.2d at 698). Furthermore, we have held that "the Legislature can put reasonable limits on remedies." *See, e.g., Peterson*, 2001 SD 126, ¶ 44, 635 N.W.2d at 571 (citations omitted).

[¶ 43.] In *Peterson*, 2001 SD 126, ¶ 46, 635 N.W.2d at 572, we held that a three-year statutory limit for wrongful death did not extend the two-year medical malpractice statute of repose. In so doing, we concluded that *Daugaard's* holding was not controlling, but rather cases such as *Green* were dispositive of the issue.

[¶ 44.] Under a *Daugaard* analysis, as advocated by Homeowners, if ten years is violative of "open courts" constitutional protection, what about 20 years, 50 years or 100 years or "any longer length of time into perpetuity"? *Green*, 1996 SD 146 at ¶ 28, 557 N.W.2d at 404.

> Where the constitutional validity of a statute depends upon the existence of facts, courts must be cautious about reaching a conclusion respecting them contrary to that reached by the legislature; and if the question of what the facts establish be a fairly debatable one, it is not permissible for the judge to set up his opinion in respect of it against the opinion of the lawmaker.

*Knowles*, 1996 SD 10, ¶ 67, 544 N.W.2d at 197 (citing *Radice v. New York*, 264 U.S. 292, 294, 44 S.Ct. 325, 326, 68 L.Ed. 690, 694 (1924)).

[¶ 45.] Based on our above analysis since Daugaard, it can no longer be supported as a correct interpretation of Article VI, § 20 of the South Dakota Constitution. As such *Daugaard* is set aside in favor of our rulings in *Knowles; Green; Klinker; Wegleitner and Peterson*. If the people of this state wish an expanded scope for our open courts constitutional provision, the amendment process provides the appropriate avenue for that change.

[¶ 46.] In the case at hand, the Legislature did not abolish the right-to-sue design professionals. It simply limits that right to ten years after substantial completion of construction. FMG did not have any access to, or control over, the Mall once it

was completed. Furthermore, since 1986, BDL knew there were indicators of ground movement that possibly could have been caused by construction of the Mall.

[¶ 47.] We hold SDCL 15–2A–3 constitutional [6] and therefore, affirm the trial court's grant of summary judgment.

[¶ 48.] ZINTER and MEIERHENRY, Justices, and RUSCH, Circuit Judge, and MILLER, Retired Justice, concur.

[¶ 49.] RUSCH, Circuit Judge, sitting for SABERS, Justice, disqualified; and, MILLER, Retired Justice, sitting for KONENKAMP, Justice, disqualified.

---

6.  We have carefully examined the other constitutional claims of BDL and conclude they are without merit.