KAMP, Respondent, v. WARREN-LAMB LUMBER COMPANY, Appellant.

(168 N. W. 169).

(File No. 4266. Opinion filed June 25, 1918.)

1. **Trials—Error—Issues—Directing Verdict, Conflicting Evidence, Inferences.**

   Where the evidence presents an issue of fact, a motion for directed verdict is properly denied; since upon such motion every conflict in evidence, and every inference a jury might draw therefrom, should be resolved in favor of the opposite party.

2. **Negligence—Lumber Mill Cart Driver—Injury From Falling Lumber—Obstacle on Tramway—Violation of Instructions—Loads as Appliances—Negligence of Mill Company, of Employee, of Fellow-Servant—Question for Jury.**

Plaintiff, for ten days prior to his injury was employed by defendant mill company to drive a lumber cart over certain tramways, and to unload therefrom various brands of lumber at corresponding tramways which slightly inclined downward from the mill to storage yards, the loading being done only by plaintiff's fellow-servants, who were instructed to load the lumber on the carts, each sort in a perpendicular pile in such order that each sort could be unloaded at the proper place as the cart proceeded down the tram; the lumber in question however having been improperly loaded with planks on top belonging at the most distant tram, to which point plaintiff drove to unload them. On returning up the tram with the balance of the load, which was being hauled by a burro. plaintiff being on top holding the load together with his knees. the cart came in contact with a jog caused by beveled edges of double flooring on that part of the tram above the jog. In attempting with the aid of another driver, to assist the burro in hauling the load over the jog, the assistant in lifting on a wheel, gave the cart a jerk, some of the lumber thereupon falling upon and injuring plaintiff; the load not having been well piled, and having jarred loose as it first came upon the tram; it appearing that plaintiff did not stop at other trams on the way down to unload lumber, because the planks on top belonged at the farther tram. Held, that under the evidence a jury might have inferred that plaintiff was not knowingly violating his instructions when he went first to the farther tram to unload the top planks; that the loaded carts were the appliances furnished drivers and with which they were required to perform their duties; that the mill company represented by the lumber loaders, was responsible for any negligence in manner of loading the carts, of which drivers were ignorant; that whether defendant company was negligent in this respect was a question for jury; that the improper loading of said cart indicated that the cart should first stop at the farther tram to begin unloading. Held, further that whether plaintiff was proceeding properly in discharge of his duties was a question of fact for jury, as also the question whether he was at fault or otherwise when he reached the jog and found that the burro was unable to handle the load; that if he was not at fault; it was his duty to adopt reasonable means such as seemed necessary to overcome the difficulty, which duty he apparently attempted to perform; that whether his injury resulted from his own negligence or of his fellow-servant driver, or was due to improper loading of the cart, were questions for jury.

Appeal from Circuit Court, Pennington County. Hon. Levi McGee, Judge.

Action by Ernest Kamp, a minor, by W. H. Tompkins, his guardian ad litem, against the Warren-Lamb Lumber Company, to recover damages for personal injury. From a judgment for plaintiff, and from an order overruling defendant's motion for a directed verdict, it appeals. Affirmed.

*Buell & Denu,* for Appellant.

*Frank D. Bangs,* for Respondent.

(1) To point one of the opinion, Appellant cited:

Lee v. Great Northern Railway Co. (S. D.) 163 N. W. 560; Butler v. Kilpatrick, (S. D.) 162 N. W. 371; Clinksdale v. Wis. Granite Co. (S. D.) 160 N. W. 843; Beleal v. Northern Pacific Railway Company, (N. D.) 108 N. W. 33.

SMITH, J.   [1] Action for damages for personal injuries. Verdict and judgment for plaintiff. Appeal is from the judgment and an order overruling appellant's motion for a directed verdict. This ruling alone is assigned as error. The only question involved is whether there was an issue of fact decisive of the right to recover damages, which should have been submitted to the jury. Appellant contends, in effect: First, that the evidence is insufficient to present any issue as to negligence on the part of the defendant; second, that the evidence conclusively shows that plaintiff's injuries were occasioned by his own negligence.; third, that the evidence conclusively shows that his injuries were the result of the act of a fellow servant for which appellant cannot be held responsible. If there was evidence presenting issues of fact upon either of these questions the trial court did not err in overruling appellant's motion for a directed verdict. Upon such motion every conflict in the evidence, and every inference which a jury might draw from the evidence, should be resolved in respondent's favor.

[2] The defendant is a corporation engaged in the business of sawing lumber in Rapid City, and employs a large number of men, The storage yards are connected with the mill by a system of elevated tramways, consisting of a main tramway with branches. The branch trams are numbered, except one which is farthest from the mill and is called the Black Hawk tram. The tramways are so constructed that they incline slightly downward from the mill, from the point where the lumber is loaded when being removed from the mill to the storage yards, gravity thus assisting in moving the loaded carts. The lumber comes from the saws to a table of

chains, where it is sorted and loaded onto three-wheel carts which are drawn by horses, mules, or burros. Each board is marked so as to indicate its grade and destination. The lumber is loaded onto the carts in tiers or perpendicular piles, according to its grade. From 70 to 75 planks may be loaded onto a cart, the weight of the load being 2,000 to 2,500 pounds. The drivers are instructed to move the largest loads first. The driver takes his load down the main tramway until he reaches the first branch tram at which his load or some part of it belongs, and thence past each tram called for by his load, until he reaches the farthest, or Black Hawk tram, which is the place at which lumber not left at the preceding trams is unloaded. There was a double flooring down the main tram to the Black Hawk tram, and on down that tram about half-way to where two-inch single flooring began. At that point the two-inch plank on top was beveled down toward the single-floor planks, leaving a jog or drop of an inch or an inch and a half. No trouble appears to have resulted from passing over this jog with loads when going down the tram, according to the method of un-loading contemplated in the construction of the tram system. The tram carts were of standard construction, were of the kind gener-ally used in sawmills, and were used without chains or standards to secure the loads, which was the method in general use.

Respondent, a boy 17 years of age, began work for the com-pany on September 5, 1916, and continued until October 2d, when he was injured. At that time he had been engaged for about ten days in hauling lumber on one of the carts drawn by a burro. On the morning of the accident he had hauled two loads of lumber. He took the third load and drove past all the side trams and down to the Black Hawk tram, and down that tram until he had passed the jog caused by the double flooring above referred to, where he unloaded four planks which belonged there and which were on top of the load and so placed as to bind the load together. After un·loading these planks he got on top of the load, turned round, and proceeded back up the tram, holding the load together with his knees. When he reached the jog in the floor, the burro was unable to pull the load up the beveled incline. He got down from the load, put the driving lines on top, and, with the assistance of an-other driver, named Miller, attempted to put the load up over the

jog.  He took hold of one wheel of the cart and Miller the other. In his testimony, he says:

"He (Miller) says, 'Roll it back,' and he gave it a jerk and it (the lumber) fell on me.  I think the quick jerk was the cause of it."

Miller, his witness, testified:

"I guess I was a little bit stronger, and threw the wheel ahead, and the lumber rolled off."

Respondent also testified in substance, that he did not stop at the other trams on the way down to unload any of the lumber, for the reason that the four planks on top of the load belonged at the Black Hawk tram, and he drove down there to unload them.  It appears from the evidence that the loaders were instructed to place the lumber on the carts, each sort in a perpendicular pile, in such order that each sort could be unloaded at the proper place as the cart proceeded down the tram.  It seems clear that this was not done in this instance, and that a jury could properly have drawn the inference that respondent was not knowingly violating his instructions when he went first to the Black Hawk tram to unload the planks on top which belonged there.  One Coyle was lumber yard foreman, and was the person to whom respondent made application for employment, and who hired him to work in the yards. The work in the yards was under his supervision.  The drivers had nothing whatever to do with loading the carts.  The manner of the loading was under Coyle's supervision.  The loaded carts were the appliances, in a sense the tools, furnished the drivers with which they were required to perform their duties.  The company itself, represented by Coyle, was responsible for any negligence in the manner of loading the carts, of which the drivers were ignorant.  Solleim v. Norbeck & Nicholson Co., 34 S. D. 79, 147 N. W. 266.

Whether or not appellant was negligent in this respect was a question of fact for the jury.  It appears from the evidence that Coyle was doing two men's work, that of supervising the loading and the hauling and piling of both green and dried lumber, and that planks which should have been placed for unloading last, at the Black Hawk tram, were placed on top of the load, indicating that tram as the one at which the driver should first stop and begin unloading; and the witness Coyle himself testified that this parti-

cular load was not well piled, and that, after it struck the tram, it jarred loose. It was the duty of the company to see to it that the carts were loaded in such proper manner as not to increase the hazard of the driver in the performance of his duties, and for negligence in this respect the company would be liable.

Whether, under all the evidence, respondent was proceeding properly in the discharge of his duties was a question of fact for the jury, and whether respondent was at fault or was in the proper discharge of his duties when he reached the jog in the Black Howk tram and found that the burro was unable to handle the load was likewise a question of fact for the jury. If he was not at fault, it became his duty to adopt reasonable means such as seemed necessary to overcome the difficulty. This he apparently attempted to do, and whether his injury was the result of his own negligent act or that of his fellow servant Miller, or was due to improper loading of the cart, were proper questions of fact for the jury. The trial court did not err in overruling appellant's motion for a directed verdict.

We find it unnecessary to consider other questions presented.

The order and judgment of the trial court are affirmed.