VOELLER, Appellant v. GEISLER et al., Respondents

(86 N.W.2d 395)

(File No. 9670. Opinion filed December 2, 1957)

**Charles E. Gorsuch,** Aberdeen, for Plaintiff and Appellant.

**Williamson & Schutz,** Aberdeen, for Defendants and Respondents.

McCLASKEY, Circuit Judge. Plaintiff is a farmer and defendants are real estate brokers at Aberdeen. The 640 acres of land in question was owned by Myrtle A. Treat and Emma L. Shephard who reside in Minnesota.

On January 6, 1955 plaintiff executed a written offer to buy the section at $32.50 per acre, for which he was to get a title free from encumbrance. He delivered the offer and $1,000 down payment to defendants who sent them to the owners in Minnesota. The owners accepted the offer and sent abstracts of title to defendants. Defendants notified plaintiff by letter that his offer had been

accepted, and delivered the abstracts to the Aberdeen representative of Federal Land Bank of Omaha from which plaintiff was borrowing the balance of the purchase price.

Owners Treat and Shephard also placed their warranty deed to plaintiff in escrow with First National Bank of Aberdeen with instructions to deliver the deed upon receipt of the balance due them. The balance was paid and plaintiff accepted the deed.

However, plaintiff did not get a clear title as certain unpaid taxes constituted a lien upon the land. He demanded payment of the taxes from defendants, and upon their refusal to pay he brought this action. The trial resulted in a directed verdict for defendants, and judgment based upon it. Plaintiff appealed.

Plaintiff presents nine Assignments of Error. In his brief he groups for discussion Assignments I to V inclusive, and Assignments VI to IX inclusive. We will treat them in the same way.

Assignments I to V inclusive charge error in rejecting plaintiff's Exhibits 6 and 9, and in sustaining objections to three questions. The objections were that the exhibits, and the facts sought by the questions, were irrelevant and immaterial under the issues.

The purpose of the rejected evidence was to show that defendants had a secret agreement with the owners to receive $2.50 per acre commission on the sale.

The cause of action tendered by the complaint is that defendants contracted to deliver the land to plaintiff free of encumbrance, but that they delivered it subject to an encumbrance and are therefore liable to plaintiff in damages. The action is one of simple breach of contract. Its character is shown in paragraph III of the complaint:

> "That the defendants represented that the real property above described was owned by Myrtle A. Treat and Emma L. Shephard who lived in Minnesota, and that such land could be purchased for $32.50 per acre free and clear of all encumbrances; that at such time the defendants had an agreement

with the said Myrtle A. Treat and Emma L. Shephard, wherein and whereby they would sell such real estate for a sum of $30.00 per acre net to them; that the plaintiff herein was unaware of defendants' agreement with Myrtle A. Treat and Emma L. Shephard, and thereafter entered into an agreement with the defendants wherein and whereby they agreed to deliver to said plaintiff title to the above described real estate for $32.50 per acre, or a total sum or $20,800.00, free and clear of all encumbrances.

"That plaintiff paid said defendants $20,800.00 for such 640 acres, and defendants delivered to plaintiff a deed to such Section 34, Township 128, Range 64, Brown County, South Dakota, but defendants failed to deliver such real property free and clear of all encumbrances, in that they failed to pay the 1954 real estate taxes thereon in the sum of $501.28."

▆▆▆▆ It is observed that, along with the statement of the essential elements of the contract, plaintiff injected this extraneous matter:

"* * * that at such time the defendants had an agreement with the said Myrtle A. Treat and Emma L. Shephard, wherein and whereby they would sell such real estate for a sum of $30 per acre net to them; that the plaintiff herein was unaware of defendants' agreement with Myrtle A. Treat and Emma L. Shephard * * *."

If this was an attempt to plead fraud, it falls short of doing so.

"To be sufficient, a pleading setting up fraud as a basis of recovery of damages must clearly and distinctly allege all of the essential elements of actionable fraud." 37 C.J.S. Fraud § 81.

If no cause of action for fraud was intended this allegation is mere surplusage. It in no way tends to establish the breach of contract charged. Its sole purpose appears to be to express the erroneous assumption that

defendants were under duty to volunteer to plaintiff the fact that they were receiving a broker's commission. Giving plaintiff's evidence full credence it does not show plaintiff's employment of defendants, or that there was a fiduciary relationship between them.

Plaintiff went to defendants because he knew they were real estate brokers. He told them that he wanted to buy this section and would like to get it for $30 per acre. They were to ascertain who were the owners and what the land could be bought for. That was the extent of their authorization and responsibility. In one of their functions real estate brokers act as middlemen and nothing was said to indicate that plaintiff dealt with them in any other capacity.

Subsequently they reported that the owners were Treat and Shephard and that the price to plaintiff would be $32.50 per acre. Plaintiff said he would pay it and he executed Exhibit 1 in which he offered to pay that price, and in which Treat and Shephard were identified as the owners.

From the evidence it is clear that plaintiff's contract was with Treat and Shephard. If plaintiff wanted to change his cause of action against defendants to some other ground, he would have had to amend. He did not offer to do so and the rejected evidence is wholly irrelevant to the issue pleaded.

It is also true that the evidence in question is elsewhere in the record.

Hence no error can be predicated upon Assignments I to V inclusive.

Under Assignments VI to IX inclusive plaintiff urges that the pleadings and the evidence presented a jury question and the court should not have directed a verdict against him.

The parties went to trial on the issue tendered by the complaint and denied by the answer, that defendants made a contract of sale with plaintiff to deliver 640 acres of land free of encumbrance, but breached it because the title was subject to a tax lien, and plaintiff asks damages to the amount of the taxes.

Defendants claim that the evidence clearly showed that plaintiff's contract was with the owners of the land and that defendants only acted as brokers in making the sale.

Plaintiff also urges that defendants are liable under two other, and unpleaded, theories: (1) that defendants made a new and independent agreement with plaintiff that they would pay the taxes from moneys due the owners on the sale price, which plaintiff had turned over to them; and (2) that defendants were not entitled to the $1,600 commission they received and hence were liable for the amount of the taxes under the equitable theory of "money had and received".

The trial judge believed that these theories presented two wholly new and different causes of action, that evidence to support them was not admissible under the complaint, and that since plaintiff did not offer to amend, no jury question was presented. We will first consider whether plaintiff was entitled to go to the jury under the issue tendered by the complaint.

As we have seen, the complaint alleged that defendants contracted to deliver to plaintiff 640 acres of land at $32.50 per acre free from encumbrance. That defendants breached the agreement by delivering the land subject to a tax lien to plaintiff's damage in the sum of $501.28. The evidence bearing on this direct and simple issue was as follows.

Plaintiff expressed to defendants the wish to buy the 640 acres in question at $30 per acre. Defendants as brokers contacted the owners who advised that they would sell at $30 per acre net to them, conveying a clear title. This is a common method of establishing the amount of a broker's commission. It does not effect a sale from the owner to the broker. Defendants then informed plaintiff as to the name and Minnesota residence of the owners and that the price to him would be $32.50 per acre. Plaintiff was willing to pay that. Defendants did not tell him that the $32.50 per acre included their commission. Plaintiff did not inquire. He knew that he was not paying any commission and he was hardly so naive as to think that

defendants were working for nothing because he was "a good friend" of theirs. Nothing was concealed which plaintiff asked about or was entitled to know.

These preliminary conversations were merged in the writing defendants' Exhibit 1 which, while inaptly worded, can be construed only as plaintiff's offer to pay $32.50 per acre for a clear title. He accompanied the instrument with his check to defendants for $1,000 down payment. They sent the offer and their check for $1,000 to the owners Treat and Shephard.

Accepting plaintiff's offer, Treat and Shephard sent the abstracts to defendants who delivered them to Mr. Moore, representative of Federal Land Bank of Omaha with which plaintiff was arranging to borrow enough to pay the balance of the purchase price, $19,800.

Defendants also wrote plaintiff that "word has just been received that your offer has been accepted * * *."

Treat and Shephard placed their warranty deed to plaintiff in escrow with First National Bank of Aberdeen, with instructions to deliver it upon receipt of $18,200 to them. Plaintiff got the deed, Treat and Shephard got their $18,200 and defendants got their $1,600 commission.

The only hitch was that plaintiff did not get the clear title which Treat and Shephard, not defendants, agreed to convey to him. In closing the transaction, plaintiff relied upon the opinion which the title examiner of the Federal Land Bank furnished to it. This opinion, defendants' Exhibit 3, indicated the title to be clear. Actually the title was encumbered by tax liens aggregating $477.59. Since then penalty and interest raised the amount to $501.28 which plaintiff sued for.

Instead of suing Treat and Shephard, plaintiff sued defendants. Reasonable minds could not differ upon the fact that the contract was between plaintiff and Treat and Shephard, and that plaintiff could not recover from the defendants under the complaint alleging that his contract was with defendants. In so concluding we have observed the rule that the trial court was bound to concede to be true all plaintiff's evidence and to give him the benefit of

104

all legitimate inferences. Kamp v. Warren-Lamb Lumber Co., 40 S.D. 519, 168 N.W. 169; Johnson v. Chicago & N.W. R. Co., 71 S.D. 132, 22 N.W.2d 725; Pearsall v. Colgan, 76 S.D. 241, 76 N.W.2d 620.

■ Plaintiff also argues that defendants are liable as agents of Treat and Shephard. That was not pleaded and the evidence is to the contrary. Defendants forwarded plaintiff's written offer and down payment to Treat and Shephard. The latter notified defendants of their acceptance of the offer and sent them the abstracts for transmittal to plaintiff. But they did not authorize defendants to close the deal. Instead they sent the deed with instructions for closing to the bank. As appellant says in his brief "the testimony indicated that the owners dealt at arm's length with the defendants * * *." In this transaction defendants were simply middlemen.

■ Without offering to amend the complaint plaintiff then tried to show a separate, independent agreement by defendants to pay the taxes, constituting a new and different cause of action. The proof offered is found in the testimony of Mr. Moore and that of plaintiff's wife.

The parties had met in Mr. Moore's office to close the deal. Defendants were there with the deed which they had borrowed from the bank. No question as to the title was raised. Mr. Moore handed to defendants a check for $20,200 which included: (1) the $18,200 remaining due Treat and Shephard; (2) the $1,600 due defendants as commission on the sale; and (3) $400 to which plaintiff was entitled on the adjustment of some matters between him and defendants.

Testimony of Mr. Moore:

"Q. Was there any other conversation as to why you were giving it to the Geisler Land Company? A. Well, yes. It was stated there that there was other matters that had better be taken up to Mr. Voeller in closing this loan. So after we made the check out to them, either one of them—I don't know which one—said, 'Come up to my office and finish this transaction. Certain

taxes got to be considered and other matters to be talked over and close the deal up in our office.'

"Q. Was something said there about the taxes having to be straightened out? A. Well, considering the amount of the taxes."

Testimony of Mrs. Voeller:

"Q. Was there any conversation with reference to the check that was turned over there by Mr. Moore? A. Yes, when Mr. Moore handed it to Ganje my husband said, 'Don't I get to see my own money?' And then is when Ganje said he needed it to pay for the abstracts and taxes and that is all I remember about it."

Before these questions were asked, defendants had objected to any conversation in Mr. Moore's office tending to show this claimed independent promise to pay the taxes, "the testimony being wholly incompetent to establish the cause of action set forth in plaintiff's complaint."

This evidence presents a different ground of liability from that set out in the complaint. In the complaint it is charged that defendants are liable because they failed to perform their agreement to deliver the land with the taxes paid, the claim being that it was they with whom plaintiff contracted for an unencumbered title. Under this new theory the claim is that defendants are liable because, independent of their obligation under the alleged sale contract, they made a new promise to pay the taxes out of the money Mr. Moore was turning over to them. The theories are conflicting, each presenting a cause of action inconsistent with the other. Nothing in the complaint warned defendants that they would have to meet evidence tending to prove this different, specific, alleged promise.

Since the evidence supported a different cause of action than that tendered by the complaint and the complaint was not amended, the objection was well taken. This evidence was not entitled to consideration by the jury and so far as it is concerned the verdict was properly directed.

In his brief plaintiff, for the first time, urges a third claim that defendants were liable under the equitable

theory of "money had and received", and that the case should have gone to the jury on that issue. This theory was not pleaded and was not mentioned at the trial. Plaintiff cannot now raise the question. Moll v. Moll, 70 S.D. 58, 14 N.W.2d 124; Utah Idaho Sugar Co. v. Temmey, 68 S.D. 623, 5 N.W.2d 486; Wheeler v. Hugill, 67 S.D. 545, 295 N.W. 638; Stauffacher v. Brother, 67 S.D. 314, 292 N.W. 432, 128 A.L.R. 925.

Plaintiff's authorities are not applicable to the facts of this case. The complaint tendered only the issue that plaintiff and defendants were the principals in the sale agreement. Reasonable minds could not differ as to plaintiff's failure to prove it. The complaint was never amended to present the other issues argued. The trial court was obligated to direct the verdict.

The judgment is affirmed.

ROBERTS, RENTTO, HANSON and BOGUE, JJ., concur.

McCLASKEY, Circuit Judge, sitting for SMITH, P. J., disqualified.